IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 29, 2010

## TIMOTHEUS LAMAR JOHNSON v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2006-C-2319      Steve R. Dozier, Judge**

_____

**No. M2009-01571-CCA-R3-PC - Filed December 22, 2010**

_____

The Petitioner, Timotheus Lamar Johnson, pled guilty to second degree murder and especially aggravated robbery in exchange for a total effective sentence of thirty-five years in the Tennessee Department of Correction.  Subsequently, the Petitioner filed for post-conviction relief, alleging his trial counsel was ineffective and that his pleas were not knowingly and voluntarily entered.  The post-conviction court denied the petition, and the Petitioner appeals.  Upon review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., and D. KELLY THOMAS, JR., J., joined.

Ashley Preston, Nashville, Tennessee, for the appellant, Timotheus Lamar Johnson.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Pamela Anderson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

On September 5, 2006, the Davidson County Grand Jury returned a multi-count indictment, charging the Petitioner with premeditated first degree murder, felony murder, and especially aggravated robbery.  Thereafter, on June 4, 2007, the Petitioner pled guilty to second degree murder, as a lesser-included offense of premeditated first degree murder, and especially aggravated robbery.  The plea agreement provided that the Petitioner, who was a

standard, Range I offender, would be sentenced outside his range to thirty-five years for the second degree murder conviction. The agreement further provided that the Petitioner would receive a concurrent sentence of twenty years for the especially aggravated robbery conviction, for a total effective sentence of thirty-five years, one hundred percent of which was to be served in confinement. In exchange for his pleas, the State dismissed the felony murder charge.

At the guilty plea hearing, the State recited the following factual basis for the Petitioner's pleas:

> Your Honor, the State's proof at trial would have been that this involved a shooting that took place, 2-13-06, Combs Drive at . . . Dyne Court . . . which is in Davidson County. The victim, Mr. Buford, was shot in the street by a suspect using a handgun.
>
> Numerous witnesses to that saw three people gather around the victim and when the shots were heard, they ran away. The State's proof would be that as – that there was a witness that drove the victim to this location. It was an agreed upon transaction of controlled substances . . . with a co-defendant, Mr. McCullough.
>
> The State's proof would be that Detective Satterfield interviewed [the Petitioner], I believe on March 19th of '06. [The Petitioner] agreed that he, Mr. Harris and Mr. McCullough had been at the location. [The Petitioner] stated that he had seen the vehicle pull up, that he was sitting on a wall and looked behind – on one of those rock walls in front of some houses, that he looked behind the wall and there was a weapon behind the wall, whereupon, [the Petitioner] went out to the truck where Mr. McCullough and the victim were discussing the transaction. [The Petitioner] then stated that he . . . struck the victim with the weapon – that after Mr. Harris or Mr. McCullough told the victim to, quote, drop it off, that [the Petitioner] then struck the victim with the gun and that Mr. Harris attempted to take the gun away from the [Petitioner] whereupon[] the gun discharged, shooting [the victim]. Clearly, it would be our position that the drop it off was a demand for money from the victim. All the

parties ran. Mr. McCullough and Mr. Harris were also interviewed and gave statements to detectives.

Subsequently, on June 3, 2008, the Petitioner filed a petition for post-conviction relief, alleging that his trial counsel was ineffective and that his guilty pleas were not knowingly and voluntarily entered. At the post-conviction hearing, the Petitioner testified that he was sixteen years old when the offense occurred and that his case was transferred from juvenile court to criminal court.

The Petitioner said that trial counsel told him about the State's plea offer to allow him to plead to second degree murder with an "out of range" sentence of thirty-five years. The Petitioner stated that trial counsel made having a trial seem "useless" and that counsel believed the Petitioner would "automatically get the max." Feeling that trial counsel "had no kind of plan to defend [him]," the Petitioner decided to accept the State's plea offer. The Petitioner did not know of any possible defenses which could have been pursued at trial, but he maintained that trial counsel should have pursued a suppression motion because Petitioner was under the influence of drugs at the time he gave his inculpatory statement to police. He said that he had smoked "two and a half blunts" of marijuana. He acknowledged that counsel did raise some issues about the interrogation but complained that "nothing happen[ed] about it, though."

The Petitioner acknowledged that the gun that killed the victim was in his hands at the time the victim was killed. He also acknowledged that he told police that it "was a robbery," but he maintained that he "took no currency of any kind from the man." He conceded that he told police that he was glad to "get this off his chest."

The Petitioner said he was unaware of any of the rights he was giving up by entering the guilty pleas. He stated that he also did not understand "the State versus Hicks issue,"[1] which allowed a sentence in excess of his standard, Range I offender status. The Petitioner said that he had been doing legal research in the prison law library, and he thought that if he had gone to trial, he would have received a sentence less than thirty-five years.

The Petitioner also complained that

> I feel I was cheated out of my rights when I signed the deal and knew nothing of it and that as far as my especially aggravated

---

[1] State v. Hicks, 945 S.W.2d 706, 709 (Tenn. 1997), held that an offender may negotiate a plea agreement for a sentence encompassing one range for release eligibility purposes but another range for determining the length of sentence.

robbery being ran together with it and getting the time for it anyway, uh – yes, I really feel like I was done wrong.

The Petitioner said that when he pled guilty, he did not understand the meaning of concurrent sentencing. He learned that "[i]t's running one together with it." Regardless, he maintained that "they gave me the time for [especially aggravated robbery] when they wasn't supposed to."

The Petitioner maintained that his attorney told him to answer "yes" to all questions at the guilty plea hearing and that he followed counsel's instructions. However, when pressed, he acknowledged that he occasionally responded "no" to some questions and asked some questions of the trial court. He conceded that the trial court explained that Hicks allowed the Petitioner, a standard Range I offender, to enter into a plea agreement and be sentenced in a higher sentencing range. The trial court further explained that the Petitioner was entering such a guilty plea. At the guilty plea hearing, the Petitioner acknowledged that he understood the terms of the plea agreement. However, at the post-conviction hearing, the Petitioner said he did not understand that he was pleading outside of his range. The Petitioner acknowledged that he entered his pleas to avoid the possibility of being found guilty at trial of first degree murder and receiving a life sentence.

The Petitioner's trial counsel testified that he began representing the Petitioner in February 2006 when the case was in juvenile court. Trial counsel said that between the Petitioner's detention hearing and his transfer hearing, he underwent a psychological evaluation. The examination revealed that the Petitioner was competent to stand trial and that no psychological defense could be supported.

Trial counsel said that the Petitioner's statement to police was "devastating." The Petitioner told police that he had an automatic rifle similar to an AK47 when he and his two codefendants were robbing the victim, that he hit the victim with the butt of the rifle during the robbery, and that the victim was shot and killed while he and one of his codefendants struggled over the gun. The Petitioner told police that he was "glad he got it all off his chest" and indicated that he knew he would be charged with a crime for his participation in the offense. Trial counsel opined that the Petitioner's statement would be his "undoing."

Counsel said that the Petitioner did not reveal until April 2007, a year into counsel's representation, that he had been under the influence of drugs at the time he gave police his statement. Counsel recalled that they were quickly approaching the Petitioner's June 2007 trial date. Nevertheless, the trial court granted counsel permission to file a motion to suppress the Petitioner's statement. Counsel stated, however, that nothing on the videotape of the Petitioner's statement indicated that he spoke with police involuntarily. The Petitioner

-4-

spoke casually as if he were "talking to somebody who was an old friend." Trial counsel said he raised the issue of the Petitioner's intoxication at the motion to suppress, but the motion was denied.

Trial counsel recalled that the State was reluctant to make a plea offer, especially given the strength of the case against the Petitioner. Trial counsel said that the State had the Petitioner's statement implicating himself in the robbery and murder, the statements of the Petitioner's codefendants, and the potential testimony of the female who was in the car with the victim when he was shot and of Ronald Armstrong who heard the Petitioner say that he was involved in the crime. Nevertheless, in April 2007 the State offered to allow the Petitioner to plead to second degree murder in exchange for an out of range sentence of thirty-five years, one hundred percent of which was to be served in confinement. Neither trial counsel nor the Petitioner were happy with the length of sentence suggested by the State. Trial counsel tried to negotiate for a shorter sentence but was unsuccessful.

During conversations with the Petitioner, trial counsel explained the evidence the State possessed against the Petitioner and advised the Petitioner he was facing a potential life sentence. Trial counsel said that he believed the Petitioner understood what he was facing. Trial counsel explained the rights the Petitioner would waive by pleading guilty, and he thought the Petitioner understood. Although the Petitioner did not want to accept a sentence of thirty-five years, he "was not anxious to go to trial on this case." Therefore, the Petitioner decided to enter a guilty plea. Counsel recalled that he thought the State was going to retire the especially aggravated robbery charge, but at the plea hearing the State said it wanted the Petitioner to plead guilty to that charge with a concurrent twenty-year sentence. Trial counsel reviewed the terms of the pleas with the Petitioner to make sure he understood. Trial counsel never advised the Petitioner to say "yes" to all of the trial court's questions. Instead, he advised the Petitioner to listen carefully to the trial court's questions and to answer accordingly.

At the conclusion of the hearing, the post-conviction court accredited the testimony of trial counsel. The court noted that counsel had difficulty forming a defense for the Petitioner, especially given the Petitioner's statement to police. Knowing the Petitioner was facing a life sentence if convicted at trial, trial counsel advised the Petitioner to plead guilty. The post-conviction court found that trial counsel informed the Petitioner of the rights he was waiving by pleading guilty and of the consequences of the guilty plea. Moreover, the post-conviction court noted that the guilty plea hearing transcript reflected that the Petitioner fully understood what he was doing. Accordingly, the post-conviction court found that the Petitioner failed to prove that his trial counsel was ineffective or that his pleas were not knowingly and voluntarily entered. On appeal, the Petitioner contests this ruling.

## II.  Analysis

To be successful in his claim for post-conviction relief, the petitioner must prove all factual allegations contained in his post-conviction petition by clear and convincing evidence.  See Tenn. Code Ann. § 40-30-110(f) (2006).  "'Clear and convincing evidence means evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence.'"  State v. Holder, 15 S.W.3d 905, 911 (Tenn. Crim. App. 1999) (quoting Hodges v. S.C. Toof & Co., 833 S.W.2d 896, 901 n.3 (Tenn. 1992)).  Issues regarding the credibility of witnesses, the weight and value to be accorded their testimony, and the factual questions raised by the evidence adduced at trial are to be resolved by the post-conviction court as the trier of fact.  See Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997).  Therefore, the post-conviction court's findings of fact are entitled to substantial deference on appeal unless the evidence preponderates against those findings.  See Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

When a petitioner seeks post-conviction relief on the basis of ineffective assistance of counsel, "the petitioner bears the burden of proving both that counsel's performance was deficient and that the deficiency prejudiced the defense."  Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish deficient performance, the petitioner must show that counsel's performance was below "the range of competence demanded of attorneys in criminal cases."  Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975).  To establish prejudice, the petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694.  Further,

> [b]ecause a petitioner must establish both prongs of the test, a failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim.  Indeed, a court need not address the components in any particular order or even address both if the [petitioner] makes an insufficient showing of one component.

Goad, 938 S.W.2d at 370 (citing Strickland, 466 U.S. at 697).  Moreover, in the context of a guilty plea, "the petitioner must show 'prejudice' by demonstrating that, but for counsel's errors, he would not have pleaded guilty but would have insisted upon going to trial."  Hicks v. State, 983 S.W.2d 240, 246 (Tenn. Crim. App. 1998); see also Hill v. Lockhart, 474 U.S. 52, 59 (1985).

Additionally, we note that in determining the voluntariness of a guilty plea, a trial court must advise the defendant of the consequences of a guilty plea and determine whether the defendant understands those consequences to ensure the plea is a "voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970); see also Boykin v. Alabama, 395 U.S. 238, 244 (1969). The trial court must address the defendant personally in open court, inform the defendant of the consequences of the guilty plea, and determine whether the defendant understands those consequences. See State v. Mackey, 553 S.W.2d 337, 341 (Tenn. 1977); Tenn. R. Crim. P. 11(c). In determining whether the petitioner's guilty pleas were knowing and voluntary, this court looks to the following factors:

> the relative intelligence of the [petitioner]; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993).

In the instant case, the post-conviction court found that trial counsel met with the Petitioner and explained the charges he was facing. Trial counsel discussed with the Petitioner the evidence against him and the sentences he could receive if convicted at trial. Additionally, trial counsel reviewed the State's guilty plea offer with the Petitioner and thoroughly explained the rights the Petitioner would waive, the convictions he would receive, and the sentence to be imposed if he pled guilty. Trial counsel also explained that the Petitioner would be pleading out of his range, but he told the Petitioner he would be doing so to avoid a life sentence. The post-conviction court found that the Petitioner was thoroughly informed about the strength of the State's case against him and of the consequences of the guilty pleas, including the out of range sentence. At the plea hearing, the Petitioner indicated that he understood what he was doing and that he wanted to plead guilty. Therefore, the post-conviction court found that the Petitioner had failed to establish that trial counsel was ineffective or that his guilty pleas were not knowingly and voluntarily entered. Upon review, we conclude that there is nothing in the record to preponderate against this ruling.

## III.  Conclusion

Based upon the foregoing, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE